IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

TANYA HYER,

                       Plaintiff,

                                        Civ. Action No.
   v.                                 3:12-CV-0054 (GTS/DEP)

CAROLYN W. COLVIN, Commissioner
of Social Security,[1]

                       Defendant.

_____

APPEARANCES:                  OF COUNSEL:

FOR PLAINTIFF:

LACHMAN, GROTON LAW FIRM    PETER A. GROTON, ESQ.
P.O. Box 89
1500 East Main St.
Endicott, NY 13761-0089

FOR DEFENDANT:

HON. RICHARD S. HARTUNIAN    REBECCA H. ESTELLE, ESQ.
United States Attorney, N.D.N.Y.    Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

_____

[1]     Plaintiff's complaint named Michael J. Astrue, as the Commissioner of Social Security, as the defendant.  On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner.  She has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Tanya Hyer, who suffers from several medical impairments including fibromyalgia, asthma, varicose veins, bilateral wrist tendonitis, and depression, has commenced this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision by the Commissioner to deny her application for supplemental security income ("SSI") benefits under the Social Security Act. In support of her appeal, plaintiff argues that the agency's finding that she is not disabled, and thus ineligible for SSI benefits, resulted from the improper rejection of the opinions by her treating physician and her subjective complaints, and also fails to consider the contributing limitations arising from her alleged obesity.

Having carefully reviewed the record in the light of plaintiff's arguments, I conclude that the Commissioner's determination is fatally flawed, and thus must be set aside, because it is the product of an inadequately explained and unsupported rejection of both plaintiff's testimony and the opinions rendered by her treating physician.

# I. BACKGROUND

Plaintiff was born in October 1978; at the time of the administrative hearing in this matter, held on April 16, 2010, she was thirty-one years old. Administrative Transcript at 34, 100, 103, 134.[2]  Plaintiff and her boyfriend of thirteen years live together in a mobile home in Owego, New York.  AT 34, 46, 62-63, 114.  Plaintiff is five feet and ten inches in height, and weighs approximately 280 pounds.  AT 53-54, 107, 211.

Plaintiff attended school before dropping out at the age of sixteen, after completing the eighth grade.  AT 34, 54, 112.  While in school plaintiff undertook regular, non-special education classes, although she believes that she could have benefitted from extra assistance while in school.  AT 54, 112.  Plaintiff has not obtained an equivalency diploma since withdrawing from school.  AT 54.

Plaintiff was last employed in 2005 as a housekeeper.  AT 34-35, 109, 126, 161.  In that position, she was required to vacuum, dust, change bedding, and clean bathrooms and floors.  AT 35.  Plaintiff stopped working as a housekeeper when she could no longer perform the duties

---

[2]  Portions of the administrative transcript, which consists of a compilation of medical records and other evidence that was before the agency at the time the administrative determination in this matter was made, and was filed by the Commissioner on May 7, 2012, Dkt. No. 9, will be hereinafter cited as "AT ___".

associated with that position in light of her chronic pain.  AT 35.  Plaintiff

has also been employed in the past as a sandwich maker at a fast food

restaurant, in another housekeeping position, and as a certified nurses'

assistant ("CNA") at a nursing home.  AT 36, 109, 126, 161.

Over time, plaintiff has received medical treatment for a variety of

diagnosed conditions, including fibromyalgia, first diagnosed in 2000;

asthma, which she has experienced since childhood; varicose veins,

diagnosed in 2006; bilateral wrist tendonitis; and depression.[3]   *See e.g.,*

AT 36-37, 213, 246, 253.   As a result of those conditions plaintiff suffers

from fatigue, as well as immense pain throughout her body; while varying

in intensity, that pain tends to be extreme during five to six days out of

each week.  *Id.*  According to the plaintiff, the pain is felt in her joints,

ankles, knees, shoulders, hips and wrists, causing her to be further limited

in bending, lifting heavy objects, and raising her arms over her head.  AT

38.  Plaintiff also suffers from painful lumps in both legs over the areas

affected by her varicose veins.  *Id.*  As a result of her conditions, plaintiff

---

[3]     Plaintiff has also been diagnosed as suffering from Oligomenorrhea disorder.  AT 108.  She does not, however, assert that condition as limiting her ability to perform work related functions.  AT 269.  In addition, plaintiff was diagnosed as morbidly obese by Dr. Sandra Boehlert, who consultatively examined her on June 29, 2009.  AT 211.

claims that she is able to sit and stand for only thirty to forty-five minutes without changing positions or taking a break; can walk for only ten to fifteen minutes without a break; and cannot lift more than the equivalent of approximately one gallon of milk two to three times per day, and can carry such a weight for only fifteen to twenty feet. AT 40. Plaintiff's limitations also affect her ability to stoop, which she can do only two to three times daily. *Id.*

Plaintiff has been treated by several professionals for her conditions, including Dr. Lisa Newman, who began treating her on October 17, 2006, and who she sees approximately every four to six weeks.[4] AT 41, 170, 199-200, 246-55, 271-304. For her asthma, plaintiff uses Azmacort and Proventil inhalers daily.[5] AT 55, 112, 159. Plaintiff has also been prescribed Hydrocodone for pain, Naproxyn for inflammation, and Effexor for depression. AT 42, 112, 159. In addition, plaintiff occasionally utilizes

---

[4] Prior to 2006, plaintiff treated with other physicians in Owego, New York, including a Dr. Marino. AT 44, 69. The office where she received treatment, however, was closed after a flood. *Id.* While Dr. Marino's notes were largely destroyed in the flood, Dr. Newman is now in possession of some of Dr. Marino's office notes, which reflect his diagnosis of fibromyalgia for plaintiff on May 23, 2005, September 26, 2005, and February 2, 2006. AT 170.

[5] Despite her asthma, plaintiff smokes between one-half and one pack of cigarettes daily. AT 55.

braces for both wrists, and a TENS unit to help manage her pain.[6]  AT 59-60.  Plaintiff states that the medications prescribed adversely affect her ability to concentrate.  AT 43.

Prior to the deterioration of her health, plaintiff was active and able to hike, fish, perform household chores, and complete yard work.  AT 63.  Plaintiff is now extremely limited, and her customary daily activities include only reading, some walking, watching television, and socializing with friends.  AT 51, 56.  Plaintiff is able to perform some household chores, but mostly on a limited basis, and with assistance from her boyfriend.  AT 45-48, 63, 116-22.  Plaintiff has difficulty shampooing and brushing her hair, and with dressing.  AT 45.  While plaintiff is able to ride for up to forty-five minutes in a car she requires frequent breaks, as illustrated by the fact that, during the two and one-half hours required to travel to the hearing in this matter, she and her boyfriend were required to stop four times for that purpose.  AT 49-50, 65.

---

[6]      A transcutaneous electrical nerve stimulation, or "TENS", unit uses electric current produced by a device to stimulate the nerves for therapeutic purposes. Nat'l Ctr. for Biotech. Info., *Transcutaneous electrical nerve stimulation (TENS) for chronic pain*, Nat'l Libr. of Med., http://www.ncbi.nlm.nih.gov/pubmed/11687055 (last visited Feb. 23, 2013).

II.    PROCEDURAL HISTORY

A.    Proceedings Before the Agency

Plaintiff filed an application for SSI benefits on May 13, 2009, alleging that she became disabled on August 15, 2004.[7]  AT 100-02. Following an initial denial of her application, at plaintiff's request, a hearing was conducted on April 16, 2010 before Administrative Law Judge ("ALJ") John P. Ramos, to address her application for SSI benefits.  *See* AT 15-24.  Based upon a *de novo* review of the record evidence, including the hearing testimony of the plaintiff and her boyfriend, ALJ Ramos issued a decision on May 11, 2010, finding that the plaintiff was not disabled at the relevant times, and therefore denying her application for SSI benefits.

In his decision, ALJ Ramos applied the now-familiar, five-step test for determining disability, concluding first, at step one, that plaintiff had not engaged in substantial gainful activity since her revised, claimed onset date of May 11, 2009.  AT 17.  ALJ Ramos next found, at step two, that

_____

[7]    In light of the fact that by law she is only entitled to receive SSI benefits beginning on the first day of the month after the filing of her application, the plaintiff later adjusted her alleged onset date to May 11, 2009.  *See* AT 162.

plaintiff suffers from several severe physical impairments that significantly affect her ability to perform work-related functions, including depression, fibromyalgia, asthma, varicose veins, bilateral wrist tendonitis, status post left knee surgery, and obesity. AT 17. He concluded, however, that those impairments do not, either alone or in combination, meet or medically equal any of the listed, presumptively disabling impairments contained within the Commissioner's regulations (20 C.F.R. Pt. 404, Subpt. P, App. 1). AT 17-18.

Before proceeding to step four of the disability analysis, ALJ Ramos next determined that, despite her conditions, plaintiff retains the residual functional capacity ("RFC") to perform light work, as defined by regulation,[8] with the exception that she can lift no more than twenty

_____

[8]     By regulation, "light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

pounds occasionally and is only able to lift or carry up to ten pounds frequently; can sit, stand, and walk for six hours in an eight hour work day; should avoid concentrated exposure to respiratory irritants; and further that she retains the mental ability to understand and follow simple instructions, to perform simple tasks with supervision and independently, to maintain attention/concentration for tasks, to regularly attend to a routine and maintain a schedule, to relate to and interact appropriately with others, and to handle reasonable levels of simple, repetitive work-related stress. AT 18-19. Based upon his RFC determination, the ALJ concluded, at step four, that plaintiff is unable to perform any of her past relevant work, and went on to conclude, at step five, that application of the medical-vocational guidelines set forth in the Commissioner's regulations (the "grids"), 20 C.F.R. Pt. 404, Subpt. App.2, directs a finding that plaintiff is not disabled, and is thus ineligible to receive SSI benefits. AT 22-24. The ALJ's opinion became a final determination of the agency on December 13, 2011, when the Social Security Administration Appeals Council denied plaintiff's request for review of that decision. AT 1-3.

B.    <u>This Action</u>

Plaintiff commenced this action on January 11, 2012.  Dkt. No. 1.

Issue was thereafter joined by the Commissioner's filing of an answer on

May 7, 2012, accompanied by an administrative transcript of the

proceedings and evidence that was before the agency when its decision

was made.  Dkt. Nos. 8, 9.  With the filing of plaintiff's brief on September

11, 2012, and the Commissioner's brief on December 26, 2012, the matter

is now ripe for determination and has been referred to me for the issuance

of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and

Northern District of New York Local Rule 72.3(d).  See also Fed. R. Civ. P.

72(b).

III.    <u>DISCUSSION</u>

A.    <u>Scope of Review</u>

A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal

v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.

2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986).  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "'more than a mere

scintilla'" of evidence scattered throughout the administrative record.
*Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427 (quoting *Consolidated
Edison Co.*, 308 U.S. at 229, 59 S. Ct. 219); *Martone,* 70 F. Supp. 2d at
148 (quoting *Richardson*). "To determine on appeal whether an ALJ's
findings are supported by substantial evidence, a reviewing court
considers the whole record, examining the evidence from both sides,
because an analysis of the substantiality of the evidence must also
include that which detracts from its weight." *Williams*, 859 F.2d at 258
(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct.
456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards
have been applied, and/or that substantial evidence does not support the
agency's determination, the agency's decision should be reversed.  42
U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the
court may remand the matter to the Commissioner under sentence four of
42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to
develop a full and fair record or to explain his or her reasoning.  *Martone*,
70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.
1980)).  A remand pursuant to sentence six of section 405(g) is warranted

if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 644 (2d Cir. 1983).

      B.      <u>Disability Determination: The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must
> be] of such severity that he is not only unable to do
> his previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work

exists in the immediate area in which he lives, or
whether a specific job vacancy exists for him, or
whether he would be hired if he applied for work.

*Id.* at § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* at §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* at §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id. at* §§ 404.1520(d), 416.920(d), Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Id.* at §§ 404.1520(d), 416.920(d); *see also Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work.  *Id.* at §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Burgess v. Astrue*, 537 F.3d 117, 118 (2d Cir. 2008); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Burgess*, 77 F.3d at 118; *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    The Evidence in This Case

In support of her appeal of the Commissioner's decision in this case, plaintiff raises three arguments, asserting that (1) in arriving at his RFC finding and resulting final determination, ALJ Ramos improperly rejected

opinions of plaintiff's treating source, Dr. Lisa Newman, that contradict his findings; (2) the ALJ improperly discounted plaintiff's statements regarding her limitations without engaging in the required credibility assessment or properly detailing the basis for his findings; and (3) ALJ Ramos failed to take into account the contributing limitations on plaintiff's ability to perform work-related resulting from her obesity.

1.   Treating Physician

"With respect to the nature and severity of [a claimant's] impairment(s), the SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess*, 537 F.3d at 128 (internal quotations and alterations in original, citations omitted).  "According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Veino,* 312 F.3d at 588. Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  *Veino*, 312 F.3d at

588.

If the ALJ does not give controlling weight to a treating source's opinion, he must apply several factors to determine what degree of weight should be assigned to the opinion, including (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the medical source has supported his or her opinion, (4) the degree of consistency between the opinion and the record as a whole, (5) whether the opinion is given by a specialist, and (6) other evidence which may be brought to the attention of the ALJ.  20 C.F.R. §§ 404.1527, 416.927.   In addition, if the ALJ choose to reject a treating physician's opinions, he must provide his reasons for doing so.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  An ALJ's failure to apply these legal standards when considering a treating physician's opinions constitutes a proper basis for reversal of an ALJ's determination. *Johnson*, 817 F.2dat  986; *Barnett*, 13 F. Supp. 2d at 316-17.

Here, the record contains multiple written assessments by Dr. Newman regarding plaintiff's capabilities.  In August 2008, Dr. Newman provided the agency with an assessment referencing her diagnoses of depression, asthma, fibromyalgia, Oligomenorrhea, and social phobia,

17

and stating that plaintiff is "unable to work in any capacity at this time, to be reevaluated in 3 months." AT 246-47. Dr. Newman's 2008 assessment draws support from clinical findings recorded on August 7, 2008, in which she noted that plaintiff "has positive tender points throughout her interior and posterior thorax. She has pain with range of motion of all joints, although no sign of synovitis is noted." AT 289-90.

On January 28, 2010, Dr. Newman completed a fibromyalgia medical source statement, again listing her diagnoses and describing pain precipitants, and opining that plaintiff can sit, stand and walk for only about two hours in an eight hour work day, is incapable of lifting at any level, and can tolerate only a low level of work-place stress. AT 248-52. On March 30, 2010, Dr. Newman submitted a completed questionnaire, in which she opined that plaintiff is capable of lifting and carrying between five and ten pounds occasionally, and indicating that, while she may be able to work five days per week, she is not capable of working eight hours in a day, or forty hours weekly.[9] AT 254. In that assessment, Dr.

---

[9] In a written statement also provided in this case, Dr. Newman has clarified that, in her opinion, the limitations experienced by plaintiff in standing and walking result from the combined effects of her varicosities and fibromyalgia. AT 170-72. In that statement, Dr. Newman also reiterated her opinion that plaintiff is unable to work on a full time basis. AT 171. The question of whether the plaintiff can work comes close to the ultimate issue of disability, a matter falling within the sole province of the Commissioner. *Snell v. Apfel*, 177 F.3d 128, 133-34 (2d Cir. 1999).

Newman noted her opinion that plaintiff is moderately limited in the areas of walking, standing, sitting, lifting, carrying, pushing, pulling, bending, climbing, and maintaining attention/concentration.  AT 246.

The ALJ's rejection of the opinions of Dr. Newman, the physician who has treated the plaintiff regularly since 2006, is both ill-explained and unsupported.   The ALJ contends that Dr. Newman's opinions are internally inconsistent because, on the one hand, Dr. Newman concluded that plaintiff is unable to work, but, on the other, also found that plaintiff's symptoms are manageable with medications, and provided a fair prognosis on April 1, 2010.  AT 21.  The ALJ also noted that the conservative course of treatment was taken.  AT 21.  However, the ALJ failed to consider Dr. Newman's statement, supported by the plaintiff's testimony, that she has good and bad days, and that on the good days, with medication, she may be able to perform work related functions only to some degree.  AT 171-72.

Importantly, the ALJ's decision, particularly regarding the conservative level of treatment prescribed, fails to recognize the elusive

_____

Nonetheless, as a treating source, Dr. Newman is qualified to state her observations regarding the work-related limitations experienced as a result of plaintiff's conditions.

nature of fibromyalgia.[10]  Fibromyalgia is recognized as a potentially

severe impairment that may support a claim of disability under the Act,

and, by its very nature, is not always readily susceptible to detection or

verification through clinical testing or other objective means.[11]  *Green-*

*Younger v. Barnhart,* 335 F.3d 99, 108 (2d Cir. 2003); *Cruz v. Apfel*, No.

97-CV-1170, 1998 U.S. Dist. LEXIS 23385, at *22-23 (N.D.N.Y. Nov. 4,

1998) (Di Bianco, M.J.), *adopted by* 1998 U.S. Dist. LEXIS 23384

(N.D.N.Y. Dec. 21, 1998) (Kahn, J.).  Addressing the condition, the

Seventh Circuit has explained that

> fibromyalgia . . . [is] a common, but elusive and

---

[10]     In his decision, the ALJ states that clinical notes regarding plaintiff's
treatment do not substantiate that she meets the diagnostic criteria for fibromyalgia.
AT 19.  Yet two medical professionals, Dr. Marino and Dr. Newman, have
independently diagnosed the plaintiff as suffering from that condition.  AT 170.  In
January of 2010, Dr. Newman completed a fibromyalgia medical source statement that
provided considerable detail supporting her diagnosis.  AT 249-52. I note, moreover,
that Dr. Boehlert, the consultant who conducted an examination of the plaintiff on June
29, 2009, also noted plaintiff's fibromyalgia diagnosis.  AT 213.

[11]     Fibromyalgia is described by a leading medical source as:

> [a] syndrome of chronic pain of musculoskeletal origin but
> uncertain cause.  The American College of Rheumatology has
> established diagnostic criteria that include pain on both sides
> of the body, both above and below the waist, as well as in an
> axial distribution (cervical, thoracic, or lumbar spine or anterior
> chest); additionally there must be point tenderness in at least
> 11 of 18 specified sites.

Stedmans Medical Dictionary (27th ed. 2000).  Fibromyalgia is also commonly referred
to as fibrositis.  *Green-Younger v. Barnhart*, 335 F.3d 99, 101 n.1 (2d Cir. 2003).

mysterious disease, much like chronic fatigue syndrome, with which it shares a number of features. Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates between it and other diseases of a rheumatic character – multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch. . . . Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not[.]

*Sarchet v. Chater,* 78 F.3d 305, 306-07 (7th Cir. 1996) (internal citations omitted).

Despite its elusiveness and potentially debilitating effects, fibromyalgia, like many other medical conditions, is one that may be, but is not necessarily, so limiting as to qualify as disabling under the Act. *See Coyle v. Apfel,* 66 F. Supp. 2d 368, 376-77 (N.D.N.Y. 1999) (Hurd, J.). To be sure, the fact that plaintiff has been diagnosed by more than one physician as suffering from fibromyalgia does not automatically translate

21

into a finding of disability; it is not the presence of such a medical condition, but rather its limitations, that inform the question of whether or not a plaintiff is under a disability. *Alvarez v. Barnhart*, No. 03-CV-8471, 2005 WL 78591, at *2 (S.D.N.Y. Jan. 12, 2005) (citing, *inter alia*, *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)).

Nonetheless, given the attributes of fibromyalgia, ALJ Ramos placed undue reliance upon the conservative course of treatment prescribed in support of his rejection of the opinions of plaintiff's treating physicians. *See* AT 21.  As Dr. Newman noted,

> [t]here is no radical treatment for fibromyalgia.  All one can do is control the pain and try to keep the patient as active as possible.  With regard to the pain, I have been prescribing a fairly significant pain killer.  Similarly, I referred Ms. Hyer to a specialist, Dr. Dreyfus, for her varicosities.  He concluded that a surgical approach would not be useful and instead prescribed compression stockings.

AT 171. [12]

Here, Dr. Newman's multiple opinions reflect that, in plaintiff's case,

---

[12]    Dr. Newman's affidavit was among materials submitted to the Appeals Council after issuance of the ALJ's decision.  AT 6.  Such evidence is properly a part of the record now before the court.  *See Perez*, 77 F.3d at 44 ("Social Security regulations expressly authorize a claimant to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision.").  Accordingly, the court may consider Dr. Newman's affidavit when determining whether the ALJ's decision is supported by substantial evidence.

the fibromyalgia, coupled with other conditions including, notably varicose veins, have significantly interfered with her ability to perform work-related functions.  In rejecting those opinions of Dr. Newman, the ALJ appears to have given considerable weight to the opinions of consultant Dr. Sandra Boehlert, who examined the plaintiff on one occasion and found her not to be acutely distressed.[13]  AT 210-14.  Based upon her examination, Dr. Boehlert concluded the following:

> The claimant has mild limitations with any repetitive use of hands for exertional activity or repetitive twisting, bending at the wrist and mild, limitations to heavy ambulation or heavy squatting, bending, twisting.  Avoid respiratory irritants secondary to pulmonary disease.  Mild limitation to heavy exertion during episodes of fibromyalgia.

AT 213.   These observations, however, are not at all in conflict with the opinions of Dr. Newman or the testimony of the plaintiff to the extent that she feels better on some days than on others.

It may well be that the proper conclusion is, indeed, to reject Dr. Newman's opinions.  However, an ALJ must do so only upon proper consideration of the evidence, and is required to provide a transparent

---

[13]     In contrast to the one occasion on which Boehlert examined her, plaintiff was seen by Dr. Newman at least fifteen times over a three and one-half year period. AT 248-55, 271-304.

written decision that allows the claimant and the court to determine his rationale.  In this instance, the ALJ's decision is woefully lacking in the required statement of reasons for rejecting the opinions of plaintiff's treating physician, an admission that critically undermines the ALJ's decision.

2.  <u>Credibility</u>

During the hearing in this matter, the plaintiff described the limitations resulting from her various conditions and the medications she has been prescribed.  Her testimony revealed that, given the pain experienced, she is only able to lift the equivalent of one gallon of milk two to three times per day, and can carry that weight for only fifteen to twenty feet.  AT 39-40.  Plaintiff is also limited in her ability to sit and stand, and to concentrate, and experiences severe fatigue and drowsiness between five and six days each week.  AT 43, 38.  The ALJ concluded that, while plaintiff's medically determinable impairments could reasonably be expected to cause these symptoms, her statements were not credible to the extent they were inconsistent with his RFC finding.  AT 19.

The fact that a claimant suffers from discomfort, to be sure, does not automatically qualify here as disabled because "disability requires more

than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). However, an ALJ must take into account subjective complaints of pain in making the five step disability analysis. 20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d). When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979), *accord*, *Martone*, 70 F. Supp. 2d at 151. Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain*. Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984). In exercising that discretion, the ALJ must consider a variety of factors including the claimant's "credibility and motivation, as well as the medical evidence of impairment[.]" *Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, J., *adopting report and recommendation by* Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)). In doing so, the ALJ must "reach an independent judgment concerning the true extent of the alleged pain and the degree to which it hampers the claimant's ability to engage in substantial gainful activity." *Sweatman*, 1998 WL 59461, at *5.

When such testimony is consistent with and supported by objective

clinical evidence demonstrating that claimant has a medical impairment that one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[14]  20 C.F.R. §§ 404.1529(a), 416.929(a); *Barnett*, 13 F. Supp. 2d at 316.  If the claimant's testimony concerning the intensity, persistence or functional limitations associated with her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: (1) daily activities; (2) location, duration, frequency and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *Martone*, 70 F. Supp. 2d at 151.  If such testimony is rejected, however, the ALJ must explicitly state the basis for

---

[14]    In the Act, Congress has specified that a claimant will not be viewed as disabled unless she supplies medical or other evidence establishing the existence of a medical impairment that would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review. *Aponte v. Sec'y, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).

In this instance, a careful review of the ALJ's determination reveals a complete absence of any meaningful credibility assessment as it relates to plaintiff's subjective complaints. Despite finding that plaintiff's diagnosed conditions could reasonably be expected to cause the extent of the symptoms alleged, the ALJ rejected those subjective complaints without any discussion of the factors identified in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). The ALJ therefore failed to satisfy his duty to explicitly state the basis for his rejection with sufficient particularity to allow for meaningful judicial review. *See*, *e.g.*, *Cornell v. Astrue*, 764 F. Supp. 2d 381, 399 (N.D.N.Y. Dec. 23, 2010) (Kahn, J., *adopting report and recommendation by* Peebles, M.J.). Accordingly, I find that the ALJ's

decision fails to comply with the applicable requirements and cannot withstand judicial scrutiny.

> 3.  Obesity

In her brief, plaintiff also contends that the ALJ failed to consider the limiting affects of her obesity, when determining her RFC.

It is true that, in his determination, ALJ Ramos noted that plaintiff suffers from obesity.  AT 17.  Additionally, Dr. Boehlert, the agency's examining physician, similarly opined that plaintiff suffers from morbid obesity.  AT 211.  It does not appear, however, that plaintiff's treating physician, Dr. Newman has made that diagnosis.

When considering whether a claimant's impairment meets or equals one or more of the conditions listed in the regulations, that person's obesity and its effects, in combination with musculoskeletal impairments, must be considered in the context of the claimant's specific circumstances.[15]  20 C.F.R. Pt. 404, Subpt. P, App.1, § 1.00(Q); *see also* SSR 02-1p; *Orr v. Barnhart,* 375 F. Supp. 2d 193, 199 (W.D.N.Y. 2005). As the regulations state,

_____

[15]      Obesity in and of itself was eliminated as a listed disability in October of 1999.  *See* Social Security Ruling 00-3p.  Its description as a potential contributing factor is now referenced in section 1.00(Q) of the listings.

[o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(Q).

Assuming that plaintiff does suffer from obesity, that does not necessarily direct a finding of disability or itself reflect any limitations on the ability to perform work related functions. The mere presence of a disease or impairment alone is insufficient to establish disability; instead, it is the impact of the disease, and, in particular, any limitations that it may impose upon the claimant's ability to perform basic work functions, that is pivotal to the disability inquiry. *Rivera v. Harris,* 623 F.2d 212, 215-16 (2d Cir. 1980); *Coleman v. Shalala,* 895 F. Supp. 50, 53 (S.D.N.Y. 1995).

In this instance, the record does not reflect that plaintiff's obesity, independently, has caused or contributed to work-related limitations, nor is

noted anywhere in the record that her obesity contributes to her fibromyalgia, varicose veins, or other diagnosed conditions. I therefore recommend a finding that the ALJ did not err by failing to consider the contributory effects of plaintiff's alleged obesity when making his RFC determination.

## IV.   SUMMARY AND RECOMMENDATION

The Commissioner's determination in this matter, which hinges upon an RFC finding made by ALJ Ramos, following a hearing, cannot withstand judicial scrutiny. The ALJ's RFC determination was the product of an unsupported rejection of the opinions from plaintiff's treating physician, as well as an equally unsupported and ill-explained rejection of plaintiff's subjective testimony regarding her limitations that does not reflect a consideration of the factors prescribed by the Commissioner's regulations. I therefore conclude that the Commissioner's determination resulted from an improper application of legal principles and is not supported by substantial evidence, and that the matter should be remanded to the Commissioner for further consideration.[16]   Accordingly, it

---

[16]   Plaintiff seeks remand solely for the calculation of benefits or, alternatively, for further proceedings. Reversal and remand for the calculation of benefits is only warranted "when there is 'persuasive proof of disability' [in the record] and further development of the record would not serve any purpose." *Steficek v.*

30

is hereby respectfully

RECOMMENDED that plaintiff's motion for judgment on the pleadings be GRANTED, the Commissioner's determination of no disability VACATED, and the matter REMANDED for further consideration by the agency consistent with this opinion.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

---

*Barnhart*, 462 F. Supp. 2d 415, 418 (W.D.N.Y. 2006) (quoting *Rosa v. Callahan*, 168 F.3d 72,  83 (2d Cir. 1999)).  Remand for further consideration, on the other hand, is justified when the ALJ has applied an improper legal standard, or further findings and explanations would clarify the ALJ's decision.  *Rosa,* 168 F.3d at 82-83; *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Steficek*, 462 F. Supp. 2d at 418 (citing *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996)).  In this instance, remand is required for the purpose of making further findings and offering additional explanations of the evidence, and not because of a finding that there is persuasive proof of disability in the existing record.

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:    February 27, 2013
          Syracuse, New York

_David E. Peebles_
David E. Peebles
U.S. Magistrate Judge